IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON



ENTERED
SEP 13
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

ROBERT E. JONES,

    Plaintiff,

v.                                Civil Action No. 3:04-0731

JO ANNE B. BARNHART,
Commissioner of
Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert E. Jones appeals the Social Security Commissioner's (hereinafter "Commissioner") final decision denying his application for disability insurance benefits (hereinafter "DIB"), brought under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### I

On August 6, 2002, the plaintiff filed an application for DIB, alleging disability commencing July 6, 1999, due to an ankle injury and diabetes. The application was denied initially and on reconsideration. At plaintiff's request, an administrative hearing was held on June 17, 2003. On January 20, 2004, an administrative law judge (hereinafter "ALJ") found that the plaintiff was not disabled, and his decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Thereafter, the plaintiff filed this action seeking review of the Commissioner's decision.



At the time of the ALJ's decision, the plaintiff was fifty-one years of age, had obtained a high school education and had work experience as a scrap classifier. In his decision, the ALJ determined from the objective medical evidence that the plaintiff suffered from the following "severe" impairments,[1] as defined by the social security regulations: "right ankle fracture, status post surgery, and COPD." (R. 21.) The ALJ also determined that he did not have an impairment or impairments which in combination met or equaled any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.[2] The ALJ further determined that he had the residual functional capacity (hereinafter "RFC") to perform the following:

> lift and carry 10 pounds frequently and 20 pounds occasionally, stand 45 minutes at a time if occasionally (less than one-third of an eight-hour day); stand 20 minutes at a time if frequent (less than two-thirds of a day); and walk eight minutes at a time.

(R. 21.) On the basis of this determination and his age, education, and employment background, and relying on Rules 202.21 and 202.14 of the medical-vocational guidelines[3] and the testimony of a vocational expert (hereinafter "VE"), the ALJ found him not disabled.

Additional facts will be introduced as they relate to plaintiff's arguments for relief.

## II

Under the Social Security Act (hereinafter "Act"), the Court is required to uphold the Commissioner's decision if the decision is supported by substantial evidence and adheres to

---

[1] A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activity. 20 C.F.R. § 404.1521(a).

[2] 20 C.F.R. Pt. 404, Subpt. P., App. 1.

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2.

proper legal standards. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or his ALJ, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), and "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner or his ALJ]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issues before the Court are whether the ALJ's decision is supported by substantial evidence that plaintiff is not disabled within the meaning of the Act and whether the decision is based on the correct application of the relevant law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. § 423(d)(1)(A) (West Supp. 2000). The Commissioner has developed a five-step procedure for making this determination. The first step requires consideration of whether the claimant is engaged in substantial gainful activity. If so, the claimant is found not disabled. If not, the second step requires a finding of whether there is a "severe" impairment. If not, the claimant is found not disabled. If so, the third step calls for an

analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[4] If so, the claimant is found disabled without further analysis. If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work. If not, the claimant is found not disabled. If so, the burden of production shifts to the Commissioner for the final step.[5] In the fifth step, the Commissioner must demonstrate that the claimant can do other work. If the Commissioner satisfies this burden, benefits are denied. Otherwise, the claimant is found disabled, and benefits are awarded. 20 C.F.R. § 404.1520.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since the alleged onset date of disability; he has severe impairments; and, he is unable to perform his past relevant work. They disagree, however, on whether he has an impairment that satisfies a listing in Appendix 1, Subpart P, Regulation No. 4 and on whether his impairments prevent him from performing any work. Hence, he has appealed to this Court and seeks to have the Commissioner's decision reversed.

### III

Plaintiff has submitted two grounds in support of his motion for judgment on the pleadings. He alleges that he meets the criteria under listing 1.02 and that the ALJ's findings concerning his pain and credibility are not supported by substantial evidence. The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[5] *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

evidence and adheres to the law. The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

## A

Plaintiff's first argument for judgment on the pleadings is that he satisfies listing 1.02 in Appendix 1, Subpart P, Regulation No. 4. In support of this assertion, he points to the evaluation performed by Stephen Nutter, M.D. and his testimony.

Listing 1.02 provides, in pertinent part, as follows:

> 1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.

Listing 1.00B2b provides, in pertinent part, as follows:

> *b. What We Mean by Inability to Ambulate Effectively*
>
> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) *To ambulate effectively,* individuals must be capable of sustaining a

reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b.

On June 14, 2000, subsequent to the surgery on his ankle, Paul S. Legg, M.D., plaintiff's orthopedic surgeon, found that there was no acute swelling in the foot, that he had tenderness in the subtalar region, that his ankle range of motion was very good, that there was no pain in the ankle and that the subtalar motion was minimal with pain. Dr. Legg diagnosed subtalar joint arthritis. On June 21, 2000, Dr. Legg released the plaintiff to return to work and opined that the plaintiff was able to sit, stand and walk eight hours in an eight hour day. (R. 206.)

On June 29, 2000, Special Metals sent the plaintiff to Barboursville Physical Therapy for a functional capacity evaluation. Upon the completion of a number of tests, Michael Kennedy, a physical therapist, opined that the plaintiff could perform light to medium work. (R. 183.)

On July 17, 2000, the plaintiff was evaluated for return to work by Dawn Alexander, M.D. and Jim Becker, M.D. Drs. Alexander and Becker reported, in pertinent part, the following:

> The patient reports that his job duties include work in the refinery area, where he does a great deal of walking and climbing throughout the

> entire day. He has to be able to climb ladders, and during most of the workday, he is on his feet. He has to be able to walk on uneven surfaces and must be able to perform some heavy lifting, up to 100 pounds of lifting on some days. Additionally, he operates a forklift and has to do bending and stooping as part of his work duties.
>
> On physical examination, he is found to have an unstable right ankle. He has pain in the right ankle and he wears an ankle-foot orthotic device.
>
> On discussion of the management of this problem, the patient reports that his orthopedic surgeon has now recommended fusion of the ankle.
>
> Since the patient has been off work for over a year because of the injury and since he continues to experience numbness, weakness and intermittent sharp shooting pain in the foot, it seems unlikely that he will ever be able to return to the work activity he previously had been doing.
>
> Based on the results of this interview and examination, it is my opinion that Robert Jones is permanently and totally disabled with regard to any work duties available to him within the bargaining unit of Special Metals.

(R. 215-16.)

> On July 19, 2000, Rabah Boukhemis, M.D. examined the plaintiff and opined:
>
> For all practical purposes, this gentleman is permanently and totally disabled for his specific job. However, because he is a young man at 48, I do not see why he could not go to another type of work that demands less strenuous work and less lifting. We probably should look into vocational rehabilitation or another type of light-duty job which demands less strenuous work.

(R. 218.)

On October 24, 2002, the plaintiff underwent a physical examination performed by Stephen Nutter, M.D. Dr. Nutter observed that the plaintiff had a normal gait, that he did not require the use of a handheld assistive device and that he was stable at station and comfortable in the supine and sitting positions. Upon examination, Dr. Nutter found the following:

> **NEUROLOGICAL:** Cranial nerves II-XII intact. Muscle and tone are normal at 5/5 bilaterally in the upper and lower extremities, except for the right ankle which is rated 4/5. There is no evidence of atrophy noted. Sensory modalities are well preserved including light touch, pinprick and vibration. The biceps, triceps, brachioradialis and patellar deep tendon reflexes were symmetrical and graded normally at +2/4 bilaterally. The right Achilles deep tendon reflex is absent, while the left is normal at 2+/4. Hoffmann and Babinski's signs are negative. There is no clonus. ... Cerebellar function is intact. The patient is able to walk on the heels, but with a lot of difficulty as well as ankle pain. He was unable to walk on the toes as he could not get up on the right foot well enough. He was not able to bear weight on the right very much and somewhat did most of the weight bearing with the left. This is due to some of the decreased strength as well as the pain. The patient was unable to perform tandem gait as he could not bear weight enough on the ankle to be trustworthy during a dangerous situation and would have to step out when trying to bear weight. He was unable to squat, again, due to ankle pain and decreased range of motion.

(R. 249.)

On January 7, 2003, Fulvio Franyutti, M.D. completed an physical RFC assessment for the plaintiff. After examining all of the evidence in the record including Dr. Nutter's findings, Dr. Franyutti determined that the plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, that he could stand or walk six hours in an eight-hour workday, that he could sit for six hours in an eight-hour workday and that he could occasionally climb ramps, stairs, ladders, ropes and scaffolds.

Contrary to plaintiff's assertion, the medical evidence does not support his assertion that he satisfies listing 1.02. Dr. Nutter observed that his gait was normal and that he did not use a hand held assistance device. Moreover, after taking into account Dr. Nutter's findings as well as the rest of the record, Dr. Franyutti determined that the plaintiff could perform medium work. Dr. Franyutti did not find that the plaintiff had an extreme limitation in his ability to walk. In addition, while Drs. Legg, Alexander and Boukhemis all determined that plaintiff was unable to

perform his past work at Special Metals, they also agreed that he was able to perform at least light work. None of these doctors opined that plaintiff's ankle injury rendered him disabled. As the medical evidence does not indicate an extreme limitation of the ability to walk, and as the medical evidence is inconsistent with plaintiff's testimony, the Court holds that substantial evidence supports the ALJ's finding that the plaintiff does not satisfy listing 1.02.

### B

Next, the plaintiff argues that substantial evidence does not support the ALJ's findings concerning his credibility and pain.

The Fourth Circuit has developed the following standard for determining whether an individual's pain is disabling. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Thus, in order for a "disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established." *Id.* at 592. Furthermore, "allegations of pain and other subjective symptoms, without more, are insufficient." *Id.* "Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Id.* (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984); *see also* 20 C.F.R. § 404.1528(a) (stating that a claimant's "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment").

In assessing credibility, it is the ALJ's responsibility, not the court's, to weigh and

resolve conflicts in the evidence. Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456. *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (recognizing that the ALJ's assessment of claimant's pain level is entitled to great weight); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

As outlined above, the medical evidence does indicate that the plaintiff has an impairment which causes pain. Thus, the first part of the *Craig* analysis is satisfied. The second part of the *Craig*, analysis, however, requires a determination of whether the medical condition causes the degree of limitation, as alleged by the plaintiff. Drs. Legg, Alexander and Baukhemis all agreed that plaintiff was able to perform at least light work. Dr. Franyutti, after considering the medical record including Dr. Nutter's findings, determined that plaintiff could perform medium work. Considering these medical opinions and plaintiff's testimony, the ALJ restricted the plaintiff to light work with occasional standing up to forty-five minutes at a time, frequent standing up to twenty minutes at a time and walking up to eight minutes at a time. Thus, the ALJ did not ignore plaintiff's complaint.

Finally, plaintiff testified that he was able to sit for long periods of time. (R. 323.) Additionally, there is no medical evidence in the record corroborating plaintiff's testimony that he requires a nap everyday because of his medication and pain. Thus, the ALJ's decision not to further reduce plaintiff's RFC because of these alleged limitations is supported by substantial evidence.

As the medical evidence does not corroborate plaintiff's claims, in the amount and degree, alleged by him, the Court holds that substantial evidence supports the ALJ's finding that he is not disabled due to pain. *See Craig*, 76 F.3d at 591. The Court further holds that because the medical evidence is inconsistent with plaintiff's testimony substantial evidence supports the ALJ's finding concerning his credibility. *See Hays*, 907 F.2d at 1456.

## IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be granted and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:

*/s/ Robert J. Staker*
ROBERT J. STAKER
Senior United States District Judge